IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS ADRIAN CORTÉS-RAMOS,<br><br>Plaintiff,<br><br>v.<br><br>ENRIQUE MARTIN-MORALES<br>A/K/A RICKY MARTIN,<br><br>Defendant. | CIV. NO. 21-1374 (SCC) |

## OPINION AND ORDER

In this copyright infringement action, Luis Adrian Cortés-Ramos claims that Enrique Martin-Morales—also known as Ricky Martin—violated federal law by distributing, performing, and displaying a music video that is nearly identical to the one he submitted in the SuperSong Contest. Martin now moves for judgment on the pleadings, arguing that Cortés-Ramos relinquished his rights to that video. We grant his motion in part and deny it in part.

### I.  STANDARD OF REVIEW

Martin moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Docket No. 11. A Rule 12(c) analysis is nearly the same as a Rule 12(b)(6) analysis.

*Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006). That is, "we take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant," *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018), and ask whether these facts and reasonable inferences establish a plausible claim for relief, *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008). But because a Rule 12(c) motion "implicates the pleadings as a whole," we may supplement these facts with "documents fairly incorporated" by the pleadings and "facts susceptible to judicial notice." *Curran v. Cousins*, 509 F.3d 36, 43–44 (1st Cir. 2007) (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006)). These documents include the ones that the parties agree are authentic, even those "incorporated into the movant's pleadings"; "documents central to [the] plaintiff['s] claim"; and "documents sufficiently referred to in the complaint." *Id.* at 44 (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). In the end, judgment on the pleadings is proper "only if the uncontested and properly considered facts

conclusively establish the movant's entitlement to a favorable judgment." *Martínez v. Sun Life Assurance Co.*, 948 F.3d 62, 68 (1st Cir. 2020).

## II.  FACTS & PROCEDURAL HISTORY

This is the third lawsuit Cortés-Ramos has filed about his music video. To provide context for this one, we begin by setting out the facts and this controversy's history.

### A.  Facts

On January 2, 2014, Cortés-Ramos submitted an original music video, La Copa del Mundo, to Sony Music Entertainment and its affiliates ("Sony"), hoping to win its SuperSong Contest. Docket No. 1 ¶ 16. Ricky Martin would perform the winning submission at the 2014 Fédération Internationale de Football Association ("FIFA") World Cup. *Id.* ¶ 10. On January 8, Sony sent him an email informing him that it had selected him as a semifinalist. *Id.* ¶ 20. In this email, Sony asked him to "re-confirm all the Terms and Conditions

set out in the official rules." Docket No. 7-2, pg. 2.[1] He
responded, "I confirm that I understand all the terms and
conditions mention[ed] in the email that [I] received today."
*Id.* He later signed and notarized two documents: a release
and an affidavit. Docket No. 7 ¶¶ 79, 80; Docket No. 9 ¶ 6.

The release states, as relevant, "I . . . authorize the Co-
Sponsors of the below-referenced Contest (a copy of which
Contest's Official Rules are attached hereto), . . . to use any . .
. original, creative materials created by me . . . in connection
with my status as entrant, potential Semifinalist, Finalist
and/or Grand Prize Winner in the 'SuperSong . . . Contest.'"
Docket No. 7-3, pg. 2. And it says, "I understand and agree
that Co-Sponsors may reproduce, digitize, modify, change,
alter, adapt, or otherwise make use of my Creative Materials

---

1. At Cortés-Ramos's request, we held oral argument on Martin's motion
for judgment on the pleadings. There, Cortés-Ramos agreed that this
email, his response, the contest's official rules, the release, and the
affidavit are authentic. So he has stipulated to the authenticity of the
documents at Docket Numbers 11-2 (official rules), 11-3 (email chain), 11-
4 (release), and 11-5 (affidavit), which are attached to Martin's answer and
counterclaims at Docket Numbers 7-1 (official rules), 7-2 (email chain), 7-
3 (release), and 7-4 (affidavit).

at Co-Sponsors' sole discretion." *Id.* In the affidavit, he "affirm[ed] and represent[ed] that [he] ha[s] complied with the Official Rules of the Contest, a copy of which is attached." Docket No. 7-4, pg. 2. The contest's official rules, in turn, state that, by entering the contest, Cortés-Ramos "agree[s] that the Submission Materials, excluding the underlying copyright in Song, shall be a 'work made for hire,' with all rights therein including . . . the exclusive copyright, being the collective property of Co-Sponsors. [If] the Submission Materials are not considered to be a 'work made for hire,' [he] irrevocably assign[s] collectively to Co-Sponsors all right, title, and interest in [his] entry (including, without limitation, the copyright)." Docket No. 7-1, pg. 4.

Here are the wrinkles: Cortés-Ramos says that he never received the contest's official rules and that he was fraudulently induced to sign the release and affidavit. Docket No. 9, pg. 2. He claims that he "was misinformed, lured to enter and to participate in [the] contest with false information and threats." Docket No. 1, pg. 9. At oral argument, he

explained that Sony fraudulently induced him to sign these documents because it required him to sign them to stay in the contest after he learned that he was a semifinalist.

### B.  Procedural History

In July 2014, Cortés-Ramos filed his first lawsuit against Martin and Sony. Complaint, Cortés-Ramos v. Sony Corp. of Am., No. 14-cv-1578-GAG (D.P.R. July 28, 2014). He voluntarily dismissed his claims against Martin. Notice of Voluntary Dismissal, Cortés-Ramos v. Sony Corp. of Am., No. 14-cv-1578-GAG (D.P.R. Mar. 27, 2015). The district court later dismissed Cortés-Ramos's claims against Sony on the grounds that he is bound by the mandatory arbitration clause in the contest's official rules, regardless of whether he received them, and his fraudulent inducement claim is factually insufficient. Opinion and Order, Cortés-Ramos v. Sony Corp. of Am., No. 14-cv-1578-GAG (D.P.R. June 10, 2015). On appeal, the First Circuit affirmed the district court insofar as it had compelled arbitration because Cortés-Ramos did not contest that ruling and it was "an independent basis

for dismissing his claims." *Cortés-Ramos v. Sony Corp. of Am.*, 836 F.3d 128, 129–30 (1st Cir. 2016).

While his appeal from the first lawsuit was pending, he filed his second lawsuit against Martin only. Complaint, Cortés-Ramos v. Martin-Morales, No. 16-cv-1223-DRD (D.P.R. Feb. 8, 2016). The district court ruled that the mandatory arbitration clause also applies to disputes between Cortés-Ramos and Martin and dismissed his claims. Opinion and Order, Cortés-Ramos v. Martin-Morales, No. 16-cv-1223-DRD (D.P.R. Oct. 28, 2016). The First Circuit reversed, holding that Martin is not entitled to invoke that clause because he is not a party to the rules and failed to show that the parties intended to confer that benefit to him. *Cortés-Ramos v. Martin-Morales*, 894 F.3d 55, 60 (1st Cir. 2018).[2] On remand, Martin

---

2. Cortés-Ramos admitted, "[f]or purposes of th[at] appeal," that "he agreed to the terms of the contest's rules." *Cortés-Ramos*, 894 F.3d at 56. To the extent that this is a judicial admission, it was binding in that case and may serve as evidence here. *See United States v. Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986) ("Although a pleading in one case is not a conclusive judicial admission in a later one, it is treated as an ordinary admission which can be contradicted by other evidence.").

renewed his motion to dismiss. The district court granted it,
dismissing Cortés-Ramos's complaint without prejudice for
factual insufficiency. Opinion and Order, Cortés-Ramos v.
Martin-Morales, No. 16-cv-1223-DRD (D.P.R. Mar. 25, 2019).
The court noted, among other things, that he had failed to
comply with the Copyright Act's registration requirement,
which is a prerequisite to filing suit. *Id.* at 14–15. The First
Circuit affirmed its dismissal of his state-law claims—
including his Puerto Rico trademark claim and fraudulent
inducement claim—but vacated its dismissal of his federal
copyright claim to allow it to consider in the first instance
whether he should be allowed to supplement his complaint to
allege that he obtained his registration after filing suit or if he
should instead file a new action. *Cortés-Ramos v. Martin-
Morales*, 956 F.3d 36, 43–45 (1st Cir. 2020). It also made clear
that it "did not address whether Cortés-Ramos assigned his
rights to his music video to Sony by agreeing to the
SuperSong contest rules" because the district court did not
reach that issue. *Id.* at 45 n.8. On second remand, the district

court declined to allow him to supplement his complaint
because, it said, that would "validate" his decision to file suit
before satisfying the statutory registration requirement and
thus dismissed his federal copyright claim without prejudice.
Opinion and Order at 7–8, Cortés-Ramos v. Martin-Morales,
No. 16-cv-1223-DRD (D.P.R. Aug. 21, 2020). He did not
appeal. But he filed a third lawsuit: this one.

On August 15, 2021, he filed this lawsuit against
Martin, alleging that he violated federal copyright law by
producing, distributing, and displaying Vida, which, he says,
is nearly identical to La Copa del Mundo. He also claims that
Sony fraudulently induced him to sign the release and
affidavit. *See* Docket No. 1. Martin asserts two counter claims.
The first seeks a declaration that Cortés-Ramos has no rights
to La Copa del Mundo pursuant to the contest's official rules,
the release, and the affidavit; his purported copyright
registration is invalid because that video is a work made for
hire or he assigned his rights to it to Sony; and he lacks
standing to assert an infringement claim. Docket No. 7 ¶ 134.

The second seeks a permanent injunction enjoining him from asserting any rights to the video in any forum. *Id.* ¶ 137. In October, Sony sent a letter to the U.S. Copyright Office, asking it to cancel his registration because he had fraudulently obtained it. Docket No. 7 ¶ 129; Docket No. 7-5. It responded that any dispute as to the copyright's validity must be resolved in court. Docket No. 7 ¶ 130; Docket No. 7-7.

### III. ANALYSIS

First things first. We begin with standing because it implicates our subject-matter jurisdiction and, as it so happens, whether Cortés-Ramos has stated a plausible copyright infringement claim. *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017) ("[I]t is the plaintiff who has the burden of establishing a qualifying ownership interest both as a substantive element of the infringement claim and as a necessary predicate for standing to bring the claim." (citations omitted)). The only person who has standing to bring a copyright infringement claim is the "legal or beneficial owner of an exclusive right under a

copyright." 17 U.S.C. § 501(b); *see also* 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.02 ("[O]nly parties with ownership rights in a copyright have standing to bring claims for its infringement."). And to state a plausible copyright infringement claim, Cortés-Ramos has the burden to prove three elements: (1) a registered copyright in his video, (2) "ownership of a valid copyright," and (3) "copying of constituent elements of the work that are original." *Airframe Sys. v. L-3 Commc'ns. Corp.*, 658 F.3d 100, 105 (1st Cir. 2011) (quoting *Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*, 560 F.3d 53, 58 (1st Cir. 2009)). So our standing and merits inquiries dovetail at ownership.

To prove ownership, the plaintiff must "show that the work, viewed as a whole, is original, and that the applicable statutory requirements ancillary to the issuance of a valid copyright have been satisfied." *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005). A certificate of registration "constitutes prima facie evidence of ownership and originality of the work as a whole." *Id.* Cortés-Ramos has produced one. Docket No.

22-3. So Martin bears the burden to "demonstrate some infirmity" in it. *Johnson*, 409 F.3d at 17. He argues that Cortés-Ramos does not own it because his video is a work made for hire or, alternatively, he assigned his rights to it to Sony.

A copyright first vests in the author of the work. *Perea v. Ed. Cultural, Inc.*, 13 F.4th 43, 52 (1st Cir. 2021) (quoting 17 U.S.C. § 201(a)). The author is generally the person who created it. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). But not always. A work made for hire is a work that an employee prepares within the scope of his employment or one that a party orders or commissions for certain uses and the parties agree in a signed writing that it is a work made for hire. *Id.* at 738 (quoting § 101(2)). The employer or party that ordered or commissioned it is considered the author, and thus, absent a written agreement to the contrary, the copyright first vests in it. *Id.* at 737 (quoting § 201(b)).

We start with who initially owned the copyright, Cortés-Ramos or Sony. Cortés-Ramos says that he did (and

still does) because he never received a copy of the contest's official rules and Sony fraudulently induced him to sign the release and affidavit. Martin contends that Sony did (and still does) because those rules state that his submission to the contest is a work made for hire and the release and affidavit that Cortés-Ramos signed incorporate them. But there is a problem with Martin's contention that La Copa del Mundo is a work made for hire: There is no writing signed by *both* Cortés-Ramos and Sony that says that it is.

A work made for hire must fit within one of two categories: (1) a work an employee prepares within the scope of his employment or (2) a work commissioned or ordered for certain uses "if the parties expressly agree in a written instrument *signed by them* that the work shall be considered a work made for hire." *Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 48–49 (1st Cir. 2008) (quoting § 101) (emphasis added); *see also Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412 (7th Cir. 1992) ("The statutory language is 'signed by them,' that is, by both parties, and it means what it

says." (citation omitted)). Here, Martin does not argue that Cortés-Ramos is Sony's employee, and there is no work-for-hire agreement signed by both. No one signed the contest's official rules, and only Cortés-Ramos signed the release and affidavit. Docket Nos. 11-2, 11-4, 11-5. Moreover, Cortés-Ramos did not sign the release and affidavit until *after* he created La Copa del Mundo. That is significant because at least two courts of appeals have held that the writing establishing that a work is one made for hire must be signed *before* the work is created and another has held that is true as a general matter. *See Schiller & Schmidt*, 969 F.2d at 413 ("The writing must precede the creation of the property in order to serve its purpose of identifying the . . . owner unequivocally."); *Gladwell Gov't Servs. v. Cnty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008) (unpublished) ("The plain language of the statute indicates that a work-for-hire agreement cannot apply to works that are already in existence."); *Est. of Kauffmann v. Rochester Inst. of Tech.*, 932 F.3d 74, 77 (2d Cir. 2019) (stating "in some circumstances a

series of writings executed after creation of the works at issue
can satisfy the writing requirement" so long as it "confirm[s]
a prior agreement, either explicit or implicit, made before the
creation of the work"). We agree with those courts that the
policy underlying the signed writing requirement—*i.e.*,
"enhancing the predictability and certainty of copyright
ownership," *see Reid*, 490 U.S. at 749—would generally not be
served if the parties signed the writing after the work exists.
Because both parties did not sign a work-for-hire agreement
before Cortés-Ramos created La Copa del Mundo, he and
Sony did not comply with the statutory requirements to make
it a work made for hire. So the default rule for copyright
vesting applies here: As the creator and author of La Copa del
Mundo, the copyright first vested in Cortés-Ramos. But that
does not mean that he still owns it.

      Martin argues that by signing the release and affidavit,
which, he says, incorporate the contest's official rules, Cortés-
Ramos assigned his copyright to Sony. Cortés-Ramos
counters that he never received those rules and that Sony

fraudulently induced him to sign the release and affidavit. We will begin with Cortés-Ramos's fraudulent inducement claim because we can quickly dispose of it, then we will address whether he assigned his copyright to Sony.

Cortés-Ramos alleges that he "was misinformed, lured to enter and to participate in [the SuperSong] [C]ontest with false information and threats with the only purpose to obtain to his compositions and creations." Docket No. 1, pg. 9. At oral argument, he explained that Sony fraudulently induced him to sign these documents because it required him to sign them to stay in the contest after he learned that he was a semifinalist. In alleging fraud, the pleader "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This usually means specifying "the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). To be sure, Cortés-Ramos has specified the who, when, and where of the fraudulent representation, but he has failed to specify the what—*i.e.,* the

content of the representation. Because he has not pleaded the content of Sony's allegedly false statement, he has failed to plead a plausible fraudulent inducement claim. Thus, we dismiss this claim without prejudice. Our decision should be no surprise to him because the First Circuit affirmed the district court's dismissal of this exact claim, relying on this exact allegation, for factual insufficiency. *See Cortés-Ramos*, 956 F.3d at 44–45 ("Cortés-Ramos [says] that he 'was misinformed, lured to enter and to participate in [the] contest with false information and threats with the only purpose to obtain his release to his compositions and creations.' . . . [T]he complaint is wholly conclusory and cannot survive a motion to dismiss.").

We turn now to whether Cortés-Ramos assigned his copyright to Sony. Martin says that he did because, by entering the contest, he agreed to its official rules, which include a provision assigning his rights to his submission to Sony, and the release and affidavit incorporate those rules. Cortés-Ramos responds that he did not because he never

received them. Neither party supports its argument with caselaw and thus both leave the Court to do counsel's work. *See* Docket No. 11, pgs. 21–23; Docket No. 22, pg. 9; Docket No. 27, pgs. 5–6. Moving forward, we will disregard undeveloped arguments. *See* D.P.R. CIV. R. 7(a), (b) (stating motions and oppositions shall include citations and supporting authorities); *United States v. Bruno-Campos*, 978 F.3d 801, 809 (1st Cir. 2020) ("We have admonished before that parties act at their peril in leaving 'the court to do counsel's work,' and we are reluctant to reward such tactics. Counsel has an obligation not merely to make claims, but to develop them.") (citations omitted)). We indulge the parties here only to frame the issues that remain for summary judgment.

Under the Copyright Act, transferring copyright ownership requires (1) "an instrument of conveyance, or a note or memorandum of the transfer" (2) that is "in writing" (3) and "signed by the owner of the rights conveyed." § 204(a). To the extent that the Copyright Act is silent on an issue, we fill in the gaps with Puerto Rico law. *See* NIMMER & NIMMER,

*supra*, § 10.03(A)(8). Here, we have two writings signed by Cortés-Ramos: the release and the affidavit. Our question, then, is whether either one shows the parties' intent to transfer Cortés-Ramos's copyright to Sony. *See Soc'y of the Holy Transfiguration Monastery v. Gregory*, 689 F.3d 29, 40 (1st Cir. 2012) (stating that copyright transfer, unless by operation of law, requires a writing signed by the grantor showing an intent to transfer copyright ownership). As we answer this question, we keep in mind that Congress revised the Copyright Act to "enhance[e] predictability and certainty of copyright ownership," *Reid*, 490 U.S. at 749, and that § 204(a)'s signed writing requirement does this by "ensur[ing] that the creator of a work will not give away his copyright inadvertently," *Effects Assocs. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

We begin with the release. The release speaks only in terms of *using* Cortés-Ramos's submission to the SuperSong Contest—not *owning* it. Docket No. 11-4, pg. 2 ("I . . . authorize the Co[-]Sponsors of the . . . Contest . . . to use any a) original,

creative materials created by me and/or b) created by Co[-]Sponsors . . . in connection with . . . the 'SuperSong . . . Contest'"); *id.* ("I further acknowledge that I will not receive any other consideration from Co[-]Sponsors for any use of my Creative Materials."); *id.* ("I understand and agree that Co-Sponsors may reproduce, digitize, modify, change, alter, adapt, or otherwise make use of my Creative Materials at Co-Sponsors' sole discretion."); *id.* at 3 ("I hereby release Co-Sponsors from . . . any liability . . . based upon or relating to the use of my Creative Materials . . . ."); *id.* ("I represent to the best of my knowledge . . . that the consent of no other person . . . is required to enable Co-Sponsors to use my Creative Materials . . . ."). That matters because transferring copyright ownership and granting a license to use the work are different. *See Est. of Hevia v. Portrio Corp.*, 602 F.3d 34, 40–41 (1st Cir. 2010). Thus, although the release might be construed as a license to use Cortés-Ramos's music video, "it cannot be construed as dictating the ownership of that material." *McTigue*, 531 F.3d at 49 (explaining that where an agreement's

text speaks only to the parties' right to use the material, it cannot be construed as "speak[ing] to the ultimate ownership of the work").

Martin nevertheless argues that the release and affidavit incorporate the contest's official rules, which make clear that Cortés-Ramos, by entering the contest, assigns his rights to La Copa del Mundo to Sony. The release mentions the rules twice: (1) "I . . . authorize the Co-Sponsors of the below-referenced Contest (a copy of which Contest's Official Rules are attached hereto) . . . to use" my Creative Materials and (2) "I may receive the opportunity to have my Creative Materials included in the Television Special (as defined in the Official Rules)." Docket No. 11-4, pg. 2. But merely mentioning the rules and attaching them is not enough to manifest the parties' intent to be bound by them. *See Radio TV Española S.A. v. New World Ent. Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("A mere reference to a deal without any information about the deal itself fails to satisfy the simple requirements of § 204(a).").

The affidavit, however, does more than merely mention the rules. It states, "I affirm and represent that I have complied with the Official Rules of the Contest, a copy of which is attached." Docket No. 11-5, pg. 2. Taking as true Cortés-Ramos's statement that he never received a copy of the rules, we are reluctant to treat the affidavit as a memorandum of the transfer. Recall that a copyright transfer is not valid unless the grantor signs an instrument of conveyance or a note or memorandum of the transfer. § 204(a). The note or memorandum route presupposes that a transfer has already taken place. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 827 (3d Cir. 2011) ("The 'note or memorandum' does not itself constitute the transfer; rather, the writing renders valid and enforceable in court a change in ownership that has already taken place."); *Lyrick Studios, Inc. v. Big Idea Prods*., 420 F.3d 388, 392 (5th Cir. 2005) ("An after-the-fact writing can validate an agreement from the date of its inception, at least against challenges to the agreement by third parties."); NIMMER & NIMMER, *supra*, § 10.03(A)(3) ("[Section 204(a)] apparently

codifies the judge-made rule under the 1909 Act that, if a prior oral grant is subsequently confirmed in writing, it validates the grant *ab initio* as of the time of the oral grant."). The rules say that Cortés-Ramos agrees to be bound by them by submitting his video. Docket No. 11-2, pg. 5 ("By entering this Contest, entrant represents and warrants by submitting the Submission Materials, he or she . . . expressly agrees to all terms and conditions set forth in these Official Rules . . . ."). If he never had access to the rules, then he could not have agreed to them when he entered the contest. It follows, then, that there is no initial transfer to later confirm in writing.

Martin argues that the affidavit is the instrument of conveyance because it incorporates the contest's official rules. But he includes no legal analysis and cites no caselaw in support. Under Puerto Rico law, is the affidavit a contract that unambiguously incorporates the rules by stating that Cortés-Ramos agrees that he has complied with them? Does it matter that the alleged incorporation language is in the past tense, and the act that allegedly effectuated the transfer (*i.e.*,

submitting his video to the contest) already happened? Is Cortés-Ramos bound by the rules if he never received them and never had access to them? Martin should answer these questions and support his answers with caselaw the next time he argues that Cortés-Ramos assigned his copyright to Sony. Because Martin has not supported his position with federal copyright and Puerto Rico caselaw and the factual allegations, taken as true, give us pause, we cannot yet say that Cortés-Ramos assigned his copyright to Sony. *Cf. Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 45, 47 (2d Cir. 2002) (stating a signed addendum, attached to an agreement transferring copyright ownership, that says each signee "assent[s] to the execution of [the] agreement and agree[s] to be bound by the terms and conditions thereof" satisfies § 204(a) "because there is no risk whatever that an unsuspecting copyright owner has been induced to sign a document that does not clearly indicate an assignment of copyright interests"). For now, at least, Cortés-Ramos has shown that he has standing to bring his copyright infringement claim and satisfied the ownership prong to state

a plausible claim for relief. To be clear, whether Martin had permission to use La Copa del Mundo pursuant to a license and whether Cortés-Ramos assigned his copyright to Sony are still live issues for summary judgment.

We turn finally to the two remaining prongs to state a plausible claim for relief: a registered copyright in the allegedly infringed work and "copying of constituent elements of the work that are original." *Airframe Sys.*, 658 F.3d at 105 (quoting *Situation Mgmt. Sys., Inc.*, 560 F.3d at 58). One way to show copying is to show that Martin had access to La Copa del Mundo and that Vida is substantially similar to it. *Cortés-Ramos*, 956 F.3d at 41. As to the former prong, he alleges in his complaint that he registered his copyright in La Copa del Mundo before filing suit. Docket No. 1, pg. 7. And as to the latter, he alleges that he submitted La Copa del Mundo in the SuperSong Contest, which Martin was involved in, and that Vida is identical to it in numerous respects. That is enough to raise a reasonable inference that Martin had access to it and that it and Vida are substantially similar. Cortés-

Ramos therefore has alleged a plausible copyright infringement claim. *See Cortés-Ramos*, 956 F.3d at 41 (finding, based on these same allegations, that Cortés-Ramos sufficiently pleaded "both indirect actual copying and substantial similarity").

## IV. CONCLUSION

In sum, the copyright for La Copa del Mundo first vested in Cortés-Ramos, he has not stated a plausible fraudulent inducement claim, and taking his allegations as true and drawing all reasonable inferences in his favor, he has stated a plausible copyright infringement claim. We thus grant in part and deny in part Martin's motion for judgment on the pleadings. The Court **DISMISSES without prejudice** Cortés-Ramos's fraudulent inducement claim but leaves his federal copyright claim intact.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of August 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE