**PIETRANTONI MÉNDEZ & ÁLVAREZ, LLC**
María Dolores Trelles Hernández (USDC-Puerto Rico No. 225106)
mtrelles@pmalaw.com
María Elena Martínez Casado (USDC-Puerto Rico No. 305309)
mmartinez@pmalaw.com
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan PR 00918
Tel: 787-274-5255
Fax: 787-274-1470

**PRYOR CASHMAN LLP**
David C. Rose (admitted *pro hac vice*)
drose@pryorcashman.com
7 Times Square
New York, New York 10036
 (212) 421-4100

*Attorneys for Defendant Enrique Martin Morales p/k/a Ricky Martin*

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS ADRIAN CORTÉS-RAMOS<br><br>*Plaintiff*,<br><br>-against-<br><br>ENRIQUE MARTIN MORALES a/k/a RICKY MARTIN, JOHN DOE, RICHARD ROE, and their respective insurance companies<br><br>*Defendants*. | No. 3:21-cv-1374 (SLCC) |

## DEFENDANT ENRIQUE MARTIN MORALES'S MEMORANDUM
## OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT .................................................................................................................2

I.    LEGAL STANDARD ON SUMMARY JUDGMENT.....................................2

II.   THE COPYRIGHT INFRINGEMENT CLAIM FAILS AS A
      MATTER OF LAW BECAUSE PLAINTIFF IRREVOCABLY
      ASSIGNED HIS INTEREST IN THE COPA VIDEO TO SONY .....................................3

      A. Plaintiff Assented To The Contest Rules.......................................................4

          1. By Registering For The Contest And Submitting The Copa Video
             On The Contest Website, Plaintiff Assented To the Contest Rules.........................4

          2. Plaintiff Assented To The Contest Rules – Including
             The Assignment Provision – Multiple Additional Times.........................................8

          3. Plaintiff Also Assented To The Contest Rules Because The
             January 15, 2014 Affidavit Incorporated Them By Reference...............................9

          4. Having Participated In The Contest And Having Received
             The Benefits Of That Participation, Plaintiff Also Should Be
             Estopped From Denying That He Assented To The Contest Rules......................12

      B. Plaintiff Irrevocably Assigned His Copyright In The Copa Video To Sony ..............13

      C. The Irrevocable Assignment Set Forth In Section 3(b)(ii) Of The Contest
         Rules Satisfies The Requirements Of Section 204(a) Of The Copyright Act ............14

          1. The January 8, 2014 Email And January 15, 2014 Affidavit
             Also Independently Satisfy The Requirements Of Section 204(a)........................17

III.  THE COPYRIGHT INFRINGEMENT CLAIM ALSO FAILS AS A
      MATTER OF LAW BECAUSE PLAINTIFF RELEASED HIS RIGHTS ......................19

IV.   IN THE EVENT THE INFRINGEMENT CLAIM IS NOT DISMISSED, THE
      STATUTE OF LIMITATIONS BARS ANY CLAIM FOR DAMAGES OR LOST
      PROFITS THAT ACCRUED BEFORE AUGUST 15, 2018, AND PLAINTIFF
      CANNOT RECOVER HIS ATTORNEY'S FEES OR STATUTORY DAMAGES .......19

V.    MARTIN SHOULD BE AWARDED HIS REASONABLE
      ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT........................20

CONCLUSION.............................................................................................................................21

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(s)**

*Adam Devs. Enters., Inc. v. Arizon Structures Worldwide, LLC*,
    No. 13-cv-261 (DLI), 2014 WL 4828816 (E.D.N.Y. Sept. 29, 2014)....................................11

*Airframe Sys., Inc. v. L-3 Commc'ns Corp.*,
    658 F.3d 100 (1st Cir. 2011) ......................................................................................3

*Aminoff & Co. LLC v. Parcel Pro, Inc.*,
    No. 21-cv-10377 (AT) (KHP), 2022 WL 987665 (S.D.N.Y. Apr. 1, 2022)............................5

*Apprio, Inc. v. Zaccari*,
    No. 18-cv-2180 (JDB), 2021 WL 2209404 (D.D.C. June 1, 2021),
    *reconsideration denied*, No. 18-cv-2180 (JDB), 2021 WL 4935379
    (D.D.C. Aug. 27, 2021), *and on reconsideration in part*, No. 18-cv-2180
    (JDB), 2022 WL 971001 (D.D.C. Mar. 31, 2022)............................................................15, 16

*Aylaian v. Town of Huntington*,
    459 F. App'x 25 (2d Cir. 2012) ...................................................................................7

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ............................................................................5

*Blitman Const. Corp. v. Ins. Co. of N. Am.*,
    66 N.Y.2d 820 (1985) ...............................................................................................7

*Bonilla Davila v. UBS Fin. Servs. Inc. of Puerto Rico, Inc.*,
    No. 19-cv-1689 (GAG), 2019 WL 13262540 (D.P.R. Dec. 12, 2019)............................11, 18

*Caguas Satellite Corp. v. EchoStar Satellite LLC*,
    824 F. Supp. 2d 309 (D.P.R. 2011)..............................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................3

*In re Celsius Network LLC*,
    647 B.R. 631 (Bankr. S.D.N.Y. 2023), *leave to appeal denied*, No. 23-cv-523
    (JPO), 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023)...................................................5

*Celta Agencies, Inc. v. Denizciliksanayi Ve Ticaaret, A.S.*,
    396 F. Supp. 2d 106 (D.P.R. 2005)..............................................................................18

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*,
    17 N.Y.3d 269 (NY 2011) .........................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(s)**

*Comite Fiestas De La Calle San Sebastian, Inc. v. Cruz*,
   170 F. Supp. 3d 271 (D.P.R. 2016)..................................................................11, 18

*Cortés v. Sony Corp. of Am.*,
   108 F. Supp. 3d 18 (D.P.R. 2015)............................................................................9

*Cortés-Ramos v. Martin-Morales*,
   894 F.3d 55 (1st Cir. 2018)....................................................................................13

*Cortés-Ramos v. Martin-Morales*,
   No. 21-cv-1374 (SCC), 2022 WL 3156500 (D.P.R. Aug. 8, 2022) ....................12, 14, 17, 18

*Cortés-Ramos v. Sony Corp. of Am.*,
   836 F.3d 128 (1st Cir. 2016)....................................................................................9

*Cortés-Ramos v. Sony Corp. of Am.*,
   889 F.3d 24 (1st Cir. 2018)....................................................................................20

*Cullinane v. Uber Techs., Inc.*,
   893 F.3d 53 (1st Cir. 2018)......................................................................................5

*Da Silva v. Musso*,
   53 N.Y.2d 543 (1981) ..............................................................................................7

*Dish Network L.L.C. v. TV Net Sols., LLC*,
   No. 12-cv-1629-ORL-41TBS, 2014 WL 6685366 (M.D. Fla. Oct. 10, 2014),
   *report and recommendation adopted as modified*, No. 12-cv-1629-ORL-
   41TBS, 2014 WL 6685351 (M.D. Fla. Nov. 25, 2014)........................................16

*Dodge St., LLC. v. Livecchi*,
   32 F. App'x 607 (2d Cir. 2002) ............................................................................12

*Feliciano-Munoz v. Rebarber-Ocasio*,
   970 F.3d 53 (1st Cir. 2020).......................................................................................2

*Forcelli v. Gelco Corp.*,
   109 A.D.3d 244 (N.Y. App. Div. 2013) ..................................................................9

*Gerike v. Rent-A-Ctr., Inc.*,
   No. 14-cv-1138 (PAD) (BJM), 2014 WL 3592094 (D.P.R. June 27, 2014) ...........7

*Gillman v. Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (1988) ..................................................................................................7

## **TABLE OF AUTHORITIES**

**CASES**                                                                                            **PAGE(s)**

*Greenfield v. Philles Records, Inc.*,
   98 N.Y.2d 562 (2002) ...........................................................................................................13

*Hoffman v. Reali*,
   973 F.2d 980 (1st Cir. 1992) ...............................................................................................3

*Johnson v. Gordon*,
   409 F.3d 12 (1st Cir. 2005) .................................................................................................3

*Kaplan Co. v. Panaria Int'l, Inc.*,
   No. 96-cv-7973 (HB), 1998 WL 603225 (S.D.N.Y. Sept. 11, 1998), *aff'd sub*
   *nom. Arthur A. Kaplan Co., Inc. v. Panaria Int'l, Inc.*, 205 F.3d 1321
   (2d Cir. 2000)......................................................................................................................9

*Key Items, Inc. v. Ultima Diamonds, Inc.*,
   No. 09-cv-3729 (HBP), 2010 WL 3291582 (S.D.N.Y. Aug. 17, 2010) ...................................9

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016).............................................................................................................20

*Lamle v. Mattel, Inc.*,
   394 F.3d 1355 (Fed.Cir.2005).............................................................................................16

*Lightstone Re LLC v. Zinntex LLC*,
   No. 516443/21 (LR), 2022 WL 3757585 (N.Y. Sup. Ct. Aug. 25, 2022) ............................8, 9

*McCarthy v. Northwest Airlines, Inc.*,
   56 F.3d 313 (1st Cir. 1995)..................................................................................................3

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
   722 F.3d 591 (4th Cir. 2013) ..........................................................................................15, 16

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)...................................................................................................5

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .............................................................................................15

*Novak v. Overture Servs., Inc.*,
   309 F. Supp. 2d 446 (E.D.N.Y. 2004) ..................................................................................6

*O'Brien v. Trooper Fitness LLC*,
   No. 157090/2017 (KEF), 2019 WL 587436 (N.Y. Sup. Ct. Feb. 13, 2019)............................5

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                 **<u>PAGE(s)</u>**

*Palumbo v. Norstar Bank Upstate N.Y.*,
   212 A.D.2d 377 (N.Y. App. Div. 1995) ...............................................................12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014)...................................................................................................20

*Pimpinello v. Swift & Co.*,
   253 N.Y. 159 (1930) ...............................................................................................6, 7

*Pool Deals, LLC v. United Parcel Serv., Inc.*,
   454 F. Supp. 3d 208 (W.D.N.Y. 2020) ...............................................................10, 11

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*,
   490 F.3d 86 (1st Cir. 2007) ......................................................................................10

*Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.*,
   960 F. Supp. 2d 958 (D. Minn.), *modified*, 960 F. Supp. 2d 988 (D. Minn. 2013) ................16

*River Farm Realty Tr. v. Farm Family Cas. Ins. Co.*,
   943 F.3d 27 (1st Cir. 2019).........................................................................................3

*Rodriguez-Bird v. Santander Sec. Corp.*,
   No. 09-cv-2238 (JAF), 2010 WL 2541708 (D.P.R. June 17, 2010) ...............................7, 8, 18

*Rodriguez-Garcia v. Miranda-Marin*,
   610 F.3d 756 (1st Cir. 2010) ....................................................................................10

*Sabroso Pub., Inc. v. Caiman Recs. Am., Inc.*,
   141 F. Supp. 2d 224 (D.P.R. 2001)............................................................................9

*Sisyphus Touring, Inc. v. TMZ Prods., Inc.*,
   208 F. Supp. 3d 1105 (C.D. Cal. 2016) ...................................................................16

*Small Just. LLC v. Xcentric Ventures LLC*,
   873 F.3d 313 (1st Cir. 2017).....................................................................................15

*Soto v. State Indus. Prods.*,
   642 F.3d 67 (1st Cir. 2011)..................................................................................7, 18

# TABLE OF AUTHORITIES

## CASES

PAGE(s)

*Taxes of Puerto Rico, Inc. v. TaxWorks, Inc.*,
    5 F. Supp. 3d 185 (D.P.R. 2014) ............................................................................... 6

*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019) ..................................................................................... 13

*Universal Grading Serv. v. eBay, Inc.*,
    No. 08-cv-3557 (CPS), 2009 WL 2029796 (E.D.N.Y. June 10, 2009) ..................... 6

*Valentin v. Ameream LLC*,
    No. 152798/2020 (RL), 2021 N.Y. Misc. LEXIS 5937 (N.Y. Sup. Ct. Nov. 19, 2021) .......... 7

*Velazquez Casillas v. Forest Lab'ys, Inc.*,
    90 F. Supp. 2d 161 (D.P.R. 2000) ........................................................................... 19

*Vergara Hermosilla v. Coca-Cola Co.*,
    No. 10-cv-21418-CIV, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011), *aff'd sub*
    *nom. Hermosilla v. Coca-Cola Co.*, 446 F. App'x 201 (11th Cir. 2011) ............... 16

*Wheeler v. Kidder Peabody & Co.*,
    No. 92-2930, 1993 U.S. App. LEXIS 39326 (5th Cir. 1993) (unpublished) .......... 10

*White v. Continental Cas. Co.*,
    9 N.Y.3d 264 (2007) ............................................................................................... 13

## STATUTES AND RULES

17 U.S.C. § 204...................................................................................................... *passim*

17 U.S.C. § 412.............................................................................................................20

17 U.S.C. § 504.............................................................................................................20

17 U.S.C. § 505.....................................................................................................1, 20, 21

Fed. R. Civ. P. 56...................................................................................................1, 2, 17

## OTHER SOURCES

10 *Williston on Contracts* § 29:23 (4th ed.)...................................................................9

https://www.copyright.gov/comp3/docs/compendium.pdf............................................15

Defendant Enrique Martin Morales ("Defendant" or "Martin") respectfully submits this memorandum of law in support of his motion for an Order: (i) pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56, dismissing, with prejudice, the Complaint of Luis Adrian Cortés Ramos dated August 15, 2021; (ii) pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56, granting judgment to Martin on his counterclaims; and (iii) pursuant to 17 U.S.C. § 505, awarding Martin his reasonable attorney's fees and costs (in an amount to be subsequently determined) as the prevailing party in this action.[1]

## PRELIMINARY STATEMENT

This copyright infringement action should be dismissed as a matter of law and with prejudice because Plaintiff previously assigned all of his right and interest in the allegedly infringed work to Sony and, thus, Plaintiff does not own a copyright upon which to sue. Although that inexorable conclusion obtains for multiple independent reasons – and Martin demonstrates and elaborates upon each below – the Court can and should dispose of this motion and this matter summarily through a single straightforward line of analysis.

Nearly a decade ago, Plaintiff entered a "SuperSong" contest by visiting the contest website, registering for the contest and uploading a URL for the allegedly infringed work, a music video. As part of that process – and before affirmatively clicking "SUBMIT" on the contest website and entering the contest – Plaintiff affirmatively clicked an acknowledgment box by which he "agree[d]" that he had "read and abided by the Official Contest Rules," a hyperlink to which was prominently included on the contest website. As demonstrated below, and consistent with the legion of authorities enforcing "clickwrap" agreements similar to the one at issue here, Plaintiff

---

[1] Undefined capitalized terms have the meanings given to them in the accompanying Rule 56 Statement Of Undisputed Facts (the "SUF").

<u>assented</u> to the contest rules by clicking that acknowledgement box and entering the contest, and he is bound to the contest rules regardless of whether he actually understood, read or even accessed them.   Plaintiff's assent is significant because the "Official Contest Rules" expressly and unambiguously provide that, by entering the contest, Plaintiff "<u>irrevocably assign[ed]</u>" the copyright in the allegedly infringed music video to Sony.  (Emphasis added).  Finally, the law is clear that the assignment language in the contest rules effects a valid assignment of copyright and satisfies the transfer requirements of Section 204(a) of the Copyright Act.  Accordingly, Plaintiff's infringement claim fails as a matter of law and should be dismissed with prejudice.

As noted, the conclusion that Plaintiff assigned the copyright in the allegedly infringed music video follows for multiple additional and independent reasons.  Ultimately, however, the Court need not even reach those additional reasons because the foregoing analysis is so straightforward and dispositive.

## STATEMENT OF FACTS

For a discussion of the facts germane to this motion, Defendant respectfully refers the Court to the accompanying Rule 56 Statement of Undisputed Facts.

## ARGUMENT

## I.   LEGAL STANDARD ON SUMMARY JUDGMENT

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Feliciano-Munoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting Fed. R. Civ. P. 56(a)).  "An issue is genuine if it can be resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case."   *Id.* (citations & quotations omitted).  "The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists."   *Id.*

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a properly supported summary judgment motion, the nonmovant "must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).  To that end, "[a] nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation to defeat summary judgment."  *River Farm Realty Tr. v. Farm Family Cas. Ins. Co.*, 943 F.3d 27, 41 (1st Cir. 2019) (citations & quotations omitted); *see also Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992) (summary judgment may be granted before the parties have conducted or completed discovery).

## II.   THE COPYRIGHT INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF IRREVOCABLY ASSIGNED HIS INTEREST IN THE COPA VIDEO TO SONY

To prevail on a copyright infringement claim, a plaintiff must prove, among other things, "ownership of a valid copyright."  *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 105 (1st Cir. 2011) (citations & quotations omitted).  Although a certificate of registration from the United States Copyright Office "constitutes prima facie evidence of ownership," such evidence may be overcome by showing "some infirmity in the claimed copyright." *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (citations omitted).  Here, Plaintiff's infringement claim fails as a matter of law because he does not own the copyright in and to the Copa Video.  Instead, by entering the Contest and assenting to the Contest Rules, Plaintiff irrevocably assigned the copyright in the Copa Video to Sony.

Three constituent elements establish the fact and efficacy of Plaintiff's copyright assignment.  *First*, as demonstrated in Section II.A. below, for multiple independent reasons, Plaintiff <u>assented</u> to the Contest Rules.  *Second*, as demonstrated in Section II.B. below, by

assenting to the Contest Rules, Plaintiff unambiguously agreed in Section 3(b)(ii) to "irrevocably assign" to Sony his "copyright" in the Copa Video.  (Emphasis added).  *Third*, as demonstrated in Section II.C. below, the irrevocable assignment set forth in Section 3(b)(ii) of the Contest Rules satisfies the requirements of Section 204(a) of the Copyright Act, and Plaintiff also executed two other writings that independently satisfy Section 204(a).

Accordingly, Martin respectfully submits that the infringement claim should be dismissed, and judgment should be entered in his favor.

### A.    Plaintiff Assented To The Contest Rules

#### 1.    By Registering For The Contest And Submitting The Copa Video On The Contest Website, Plaintiff Assented To the Contest Rules

To enter the Contest, Plaintiff needed to: (i) visit the Contest Website, (ii) register for the Contest by providing personal identifying information, and then, after registering, (iii) upload a URL to his video and affirmatively click "SUBMIT."   (SUF ¶ 16).   Importantly, before affirmatively clicking the "SUBMIT" button on the Contest Website, Plaintiff also was required to affirmatively click an acknowledgment box (the "Acknowledgment Box") on the Contest Website which read: "By submitting my entry, I agree that I have read and abided by the Official Contest Rules for my country of origin."  (*Id*. ¶ 17).  To be clear, the Contest Website would not have permitted Plaintiff to click "SUBMIT" and to enter the Contest unless he had first clicked the Acknowledgment Box and "agree[d]" that he had "read and abided by the Official Contest Rules." (*Id*. ¶ 18).  The Contest Website also prominently included a hyperlink to the Contest Rules.  (*Id*.

¶ 19).[23]

The Contest Rules provide that they "shall be governed by and construed in accordance with the laws of the State of New York … without regard to choice of law principles."  (SUF ¶ 32).

Under New York law, the foregoing overwhelmingly establishes that Plaintiff assented to the Contest Rules and, thus, entered into a binding and enforceable agreement with Sony.  *See, e.g.*, *In re Celsius Network LLC*, 647 B.R. 631, 652-53 (Bankr. S.D.N.Y. 2023), *leave to appeal denied*, No. 23-cv-523 (JPO), 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023) (enforcing clickwrap agreement and noting that "New York Courts overwhelmingly accept 'clickwrap' agreements as sufficient to constitute mutual assent") (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'") (citation omitted)); *Aminoff & Co. LLC v. Parcel Pro, Inc.*, No. 21-cv-10377 (AT) (KHP), 2022 WL 987665, at *4 (S.D.N.Y. Apr. 1, 2022) (enforcing online contract because user "undoubtedly agreed to be bound … by entering [his] name … during registration and assenting to the [terms and conditions] by clicking the check box"); *O'Brien v. Trooper Fitness LLC*, No. 157090/2017 (KEF), 2019 WL

_____

[2] The Contest Rules, thus, correspond to what is commonly known as a "clickwrap" agreement, which "refers to the assent process by which a user must click 'I agree,' but not necessarily view the contract to which she is assenting." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 n.10 (1st Cir. 2018) (citation & quotation omitted).  Because "[c]lickwrap agreements necessitate an active role by the user of the website," "Courts, in general, find them enforceable." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) (citation omitted).  In contrast, "browsewrap" agreements – which also have been enforced repeatedly by courts – "exist[] where the online host dictates that assent is given merely by using the site." *Cullinane*, 893 F.3d at 61 n.10 (citation & quotation omitted; capitalization altered).

[3] Section 3(e) of the Contest Rules also provides in bolded text that: "By entering this Contest, entrant represents and warrants by submitting the Submission Materials, he or she (I) expressly agrees to all terms and conditions set forth in these Official Rules … ."  (Emphasis omitted).

587436, at *3 (N.Y. Sup. Ct. Feb. 13, 2019) (enforcing online contract where terms of use "were accessible through a hyperlink on the sign in page and which [user] accepted by clicking on a box on the [webpage]"); *Universal Grading Serv. v. eBay, Inc.*, No. 08-cv-3557 (CPS), 2009 WL 2029796, at *12 (E.D.N.Y. June 10, 2009) (enforcing online contract where user was "required to assent to the User Agreement in force at the time" in order to use the defendant's online marketplace); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451 (E.D.N.Y. 2004) (enforcing online contract where, "prior to registration for access to the Google discussion groups," a user must click "a button to indicate acceptance" of "terms and conditions" contained in a "window" on the webpage).

If the Court determines that New York law does not govern, courts in this District apply a similar analysis in assessing whether to enforce clickwrap agreements. *See, e.g.*, *Taxes of Puerto Rico, Inc. v. TaxWorks, Inc.*, 5 F. Supp. 3d 185, 187-88 (D.P.R. 2014) (enforcing clickwrap agreement because "plaintiffs explicitly accepted the 'clickwrap', or user agreement, when they clicked on the prompt stating 'Accept & Install,'" and collecting cases and noting that "[t]he majority of courts to have considered the enforceability of user agreements have concluded that those agreements are valid and enforceable") (citations omitted).

Moreover, even setting aside that Plaintiff has acknowledged, in multiple respects, receiving and reading the Contest Rules, under clear, enduring New York and Puerto Rico law, Plaintiff is bound by the Contest Rules regardless of whether he understood or even read them. As the New York Court of Appeals – the highest court in New York – explained nearly a century ago:

> Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.

*Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162-63 (1930) (citation omitted); *accord Aylaian v. Town of Huntington*, 459 F. App'x 25, 27 (2d Cir. 2012) (approving and applying *Pimpinello*); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11-12 (1988) (same; rejecting party's claim that "he was unaware of the terms in the [ ] agreement" and/or "not alerted" to them); *Blitman Const. Corp. v. Ins. Co. of N. Am.*, 66 N.Y.2d 820, 822 (1985) (same; holding that signer "is bound by the terms of the contract whether read or not"); *Da Silva v. Musso*, 53 N.Y.2d 543, 550 (1981) ("Under long accepted principles one who signs a document is, absent fraud or other wrongful act of the other contracting party, bound by its contents") (citing *Pimpinello*; other citations omitted); *Valentin v. Ameream LLC*, No. 152798/2020 (RL), 2021 N.Y. Misc. LEXIS 5937, *7-8 (N.Y. Sup. Ct. Nov. 19, 2021) (applying same rule to clickwrap agreement and finding assent).

Courts applying Puerto Rico law likewise find that a party cannot avoid his or her contractual obligations by asserting that he or she never read or understood the agreement at issue. *See Soto v. State Indus. Prods.*, 642 F.3d 67, 78-79 (1st Cir. 2011) (applying Puerto Rico law, enforcing contract and citing *Williston on Contracts*, among other authorities, for the proposition that one cannot avoid enforcement of a contract by contending that one did not read or understand the agreement, even where the signer is illiterate or not fluent in the language utilized in the agreement); *Gerike v. Rent-A-Ctr., Inc*., No. 14-cv-1138 (PAD) (BJM), 2014 WL 3592094, at *4 (D.P.R. June 27, 2014) (one "who signs an agreement cannot subsequently seek to avoid its enforcement on the grounds that he did not read the agreement or did not understand its terms") (citation & quotation omitted).  In addition, the fact that a party may be required to take additional action to obtain or review the contract or other documents alluded to in it does not negate the signer's assent.  *See Soto*, 642 F.3d at 78 ("Under Puerto Rico law, 'the onus was on [signer]' to obtain and read a copy [of the terms and conditions] before signing it") (quoting *Rodriguez-Bird*

*v. Santander Sec. Corp.*, No. 09-cv-2238 (JAF), 2010 WL 2541708, at *2 (D.P.R. June 17, 2010).

### 2. Plaintiff Assented To The Contest Rules – Including The Assignment Provision – Multiple Additional Times

Though Plaintiff's assent to the Contest Rules is established, alone, by his registering for the Contest and uploading the Copa Video to the Contest Website (and by him affirmatively clicking both the Acknowledgement Box and "SUBMIT"), Plaintiff also subsequently agreed to the Contest Rules on multiple separate occasions.

For example, by email dated January 8, 2014, Sony asked Plaintiff to "re-confirm all the Terms and Conditions set out in the official rules," and Plaintiff promptly responded by email confirming the same.  (SUF ¶¶ 20-22).  Then, one week later, on January 15, 2014, Plaintiff executed an Affidavit in which he "affirm[ed] and represent[ed] that [he] ha[d] complied with the Official Rules of the Contest, a copy of which is attached … ."  (*Id.* ¶¶ 23-24).  While Plaintiff assented to the Contest Rules (and, as the authorities cited in the preceding section establish, is deemed to have done so irrespective of whether he read them), based upon the quoted sworn statement from the Affidavit, Plaintiff necessarily received and reviewed the Contest Rules – otherwise, he could not have "affirm[ed] and represent[ed]" that he had "complied" with the Contest Rules.[4]

In addition to reinforcing Plaintiff's agreement to the Contest Rules, the January 8, 2014 email and the January 15, 2014 Affidavit both constitute separate and distinct acts of assent binding Plaintiff to the Contest Rules.  *See, e.g.*, *Lightstone Re LLC v. Zinntex LLC*, No. 516443/21 (LR),

---

[4] Plaintiff also executed a separate document under oath on January 15, 2014 – the Release & Authorization – which attached and made express reference to the Contest Rules.  (*Id.* ¶¶ 26-28). In addition, Plaintiff executed a separate affidavit in the First Cortés-Ramos Action in which he made express reference to and relied upon specific terms set forth in "the published contest rules," reinforcing that he received, reviewed and assented to the Contest Rules.  (*Id.* ¶ 29).

2022 WL 3757585, at *3 (N.Y. Sup. Ct. Aug. 25, 2022) (holding "[t]here really can be no dispute" that subsequent email "confirming" agreement recited by counterparty "was an independent acquiescence agreeing to be bound by all the terms of the email"); *Forcelli v. Gelco Corp.*, 109 A.D.3d 244, 248-49 (N.Y. App. Div. 2013) (email confirming prior agreement constituted a binding written agreement, and the email was "subscribed" within meaning of statute of frauds); *Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09-cv-3729 (HBP), 2010 WL 3291582, at *6 (S.D.N.Y. Aug. 17, 2010) (enforcing contract where agreement "was confirmed via e-mail"); *accord* 10 *Williston on Contracts* § 29:23 (4th ed.) (noting that the "logic" that permitted confirmatory telegrams and facsimile messages to constitute acceptance also applies to e-mail or other "electronic media"). And, notably, federal courts hold that an assignment of copyright can be manifested and confirmed by subsequent written communications. *See Sabroso Pub., Inc. v. Caiman Recs. Am., Inc.*, 141 F. Supp. 2d 224, 228 (D.P.R. 2001) (enforcing copyright assignment and holding that a subsequent writing may "confirm[] [an] earlier agreement"); *Kaplan Co. v. Panaria Int'l, Inc.*, No. 96-cv-7973 (HB), 1998 WL 603225, at *2 (S.D.N.Y. Sept. 11, 1998), *aff'd sub nom. Arthur A. Kaplan Co., Inc. v. Panaria Int'l, Inc.*, 205 F.3d 1321 (2d Cir. 2000) (same).

### 3.    Plaintiff Also Assented To The Contest Rules Because The January 15, 2014 Affidavit Incorporated Them By Reference

In the First Cortés-Ramos Action, the District Court concluded that the January 15, 2014 Affidavit that Plaintiff indisputably executed "incorporate[d] by reference" the Contest Rules and the arbitration clause set forth in them. *See* SUF ¶¶ 37-41; *Cortés v. Sony Corp. of Am.*, 108 F. Supp. 3d 18, 21-24 (D.P.R. 2015). Although Plaintiff appealed from the June 10, 2015 Opinion And Order of the District Court, he did not "appeal[] the ruling that his claims must be arbitrated," and the Court of Appeals for the First Circuit, thus, "affirm[ed] the order compelling arbitration." *See Cortés-Ramos v. Sony Corp. of Am.*, 836 F.3d 128, 128 (1st Cir. 2016).

Accordingly, the finding of the District Court in the First Cortés-Ramos Action and affirmed by the First Circuit – that the Contest Rules were "incorporate[d] by reference" in the Affidavit – is collateral estoppel.  Of course, if one term of the Contest Rules – the arbitration provision – was incorporated by reference into the Affidavit, then <u>all</u> of the Contest Rules were incorporated by reference.  Plaintiff had a full and fair opportunity to litigate this same question in the First Cortés-Ramos Action, and it was actually litigated, clearly decided and necessary to the earlier judgment that compelled arbitration.  As such, all the requirements of issue preclusion have been met.  *See, e.g.*, *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 90 (1st Cir. 2007) (reciting requirements for application of collateral estoppel); *Wheeler v. Kidder Peabody & Co.*, No. 92-2930, 1993 U.S. App. LEXIS 39326, at *7-8 (5th Cir. 1993) (applying collateral estoppel and finding validity of agreement that included arbitration provision already had been litigated in prior state court action) (unpublished).  And, to avoid doubt, Martin – a nonparty to the First Cortés-Ramos Action – may assert collateral estoppel against Plaintiff irrespective of whether privity exists between Martin and the defendants in that prior action.  *See Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 771 (1st Cir. 2010) (recognizing "precedent permitting defensive nonmutual collateral estoppel").

Even setting aside collateral estoppel, the Court should find that the January 15, 2014 Affidavit incorporates the Contest Rules by reference for the additional and independent reason that it clearly references them, attests to them being attached to the Affidavit, and Plaintiff specifically "affirm[ed] and represent[ed]" that he had "complied" with them.

Under both New York and Puerto Rico law, the foregoing more than suffices to establish that the Affidavit incorporated the Contest Rules by reference.  *See, e.g.*, *Pool Deals, LLC v. United Parcel Serv., Inc.*, 454 F. Supp. 3d 208, 213-214 (W.D.N.Y. 2020) ("Contracts may incorporate

other documents by reference where they describe the other documents in such clear and unambiguous terms that the identity of the other documents can be ascertained beyond reasonable doubt," and "Courts may decide whether a document is incorporated by reference as a matter of law, even if the parties urge contrary interpretations") (internal citation & quotation omitted); *Adam Devs. Enters., Inc. v. Arizon Structures Worldwide, LLC*, No. 13-cv-261 (DLI), 2014 WL 4828816, at *3 (E.D.N.Y. Sept. 29, 2014) (holding that where, as here, the writing in question "clearly identifies a single document, it eliminates all reasonable doubt and, thus, qualifies as an effective incorporation" and further noting that a "party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms") (citations & quotation omitted); *Comite Fiestas De La Calle San Sebastian, Inc. v. Cruz*, 170 F. Supp. 3d 271, 274 (D.P.R. 2016) ("The Puerto Rico Supreme Court recognizes provisions incorporated by reference when interpreting contracts") (citations omitted); *Bonilla Davila v. UBS Fin. Servs. Inc. of Puerto Rico, Inc.*, No. 19-cv-1689 (GAG), 2019 WL 13262540, at *1 (D.P.R. Dec. 12, 2019) (recognizing the "widely accepted practice of incorporating outside documents into contracts," that "[c]ontracts need not use the traditional language of 'incorporating by reference' so long as language in the agreements clearly communicates the purpose of incorporating the clause," and that "the alleged failure to present plaintiff" with the documents incorporated by reference did not affect the plaintiff's assent to the incorporated document because "[t]here is no requirement that incorporated documents be provided to plaintiff at the time of signing") (citations, quotations, ellipsis & brackets omitted).

Accordingly, Plaintiff also cannot dispute that he assented to the Contest Rules because he indisputably executed the January 15, 2014 Affidavit which clearly and unambiguously incorporated them by reference.

**4.      Having Participated In The Contest And Having Received
The Benefits Of That Participation, Plaintiff Also Should Be
<u>Estopped From Denying That He Assented To The Contest Rules</u>**

After confirming and reaffirming his assent to the Contest Rules through the January 8,

2014 email and January 15, 2014 Affidavit, Plaintiff participated in the Contest, and Sony selected

him as a semi-finalist, conferring Plaintiff with widespread publicity and promotion that he never

otherwise would have received.  (SUF ¶¶ 14-15, 22-24).  Having received such benefits without

reservation (indeed, having sought such benefits with enthusiasm), Plaintiff should be estopped –

under both New York and Puerto Rico law – from disputing that he assented to the Contest Rules.

*See, e.g.*, *Dodge St., LLC. v. Livecchi*, 32 F. App'x 607, 611 (2d Cir. 2002) (applying New York

law and noting that a party may be "estopped from denying existence of contract when the conduct

of [the party], relating to the transaction or matter complained of by him, subsequent to the rise of

it, justifies and supports the normal and reasonable conclusion that he, by his assent thereto or

acquiescence therein, has accepted and adopted it") (citation & quotation omitted); *id.* ("Perhaps

the strongest indicia that a party has assented to a contract is when that party accepts the benefits

of the agreement without reservation") (citing *Palumbo v. Norstar Bank Upstate N.Y.*, 212 A.D.2d

377 (N.Y. App. Div. 1995) (other citation omitted)); *Caguas Satellite Corp. v. EchoStar Satellite*

*LLC*, 824 F. Supp. 2d 309, 313-14 (D.P.R. 2011) ("equitable estoppel precludes plaintiffs Chico

and Caguas Satellite from enjoying rights and benefits under a contract while at the same time

avoiding its burdens and obligations") (citation omitted).  Moreover, as this Court noted on

Defendant's Rule 12(c) motion, in his appeal in First Cortés-Ramos Action, Plaintiff affirmatively

"admitted 'for purposes of that appeal,' that he agreed to the terms of the contest's rules," and "[t]o

the extent that [ ] is a judicial admission, it … may serve as evidence here."  *Cortés-Ramos v.*

*Martin-Morales*, No. 21-cv-1374 (SCC), 2022 WL 3156500, at *2 n.2 (D.P.R. Aug. 8, 2022)

(quoting *Cortés-Ramos v. Martin-Morales*, 894 F.3d 55, 56 (1st Cir. 2018) (brackets omitted)).

**B.** **Plaintiff Irrevocably Assigned His Copyright In The Copa Video To Sony**

The Contest Rules, governed by New York, are plain and unambiguous and must be construed and enforced as written. *See White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569-570 (2002).[5]

Section 2 of the Contest Rules defines "Submission Materials" to mean "Entrants' submissions including, but not limited to, Song." (SUF ¶ 33). Section 2 of the Contest Rules correspondingly defines "Song" to mean an entrant's "composition," which "may be amended, edited or otherwise altered and reworked, by one or more individuals, including, but not limited to, a Sony Music international recording artist ('Superstar') and will potentially be included on the official World Cup/FIFA album." (*Id.* ¶ 34). The "Submission Materials," thus, encompass Plaintiff's Copa Video.

Section 3 of the Contest Rules – with the bolded title "**Our Right to Use York Work and Information About You**" – provides that:

> In the event the Submission Materials are not considered to be a 'work made for hire,' ***you irrevocably assign collectively to Co-Sponsors all right, title, and interest in your entry (including, without limitation, the copyright) in any and all media*** whether now known or hereafter devised, in perpetuity, anywhere in the world, with the right to make any and all uses thereof including, without limitation, for purposes of advertising or trade."

(SUF ¶ 37; emphasis added).

---

[5] "The validity and import of an assignment generally is governed by state contract law." *TD Bank N.A. v. Hill*, 928 F.3d 259, 273 (3d Cir. 2019) (citations omitted). "The Copyright Act merely adds" certain additional requirements under Section 204(a). *Id.* at 274. Those additional requirements are addressed below in Section II.C. For an assignment to be valid under New York law (and Section 204(a) of the Copyright Act), an assignee does <u>not</u> need to sign it. *See* N.Y. General Obligations Law § 5-1107 (an assignment supported by consideration may be oral; if an assignment is not supported by consideration, it is still valid provided it is in writing and signed by assignor).

This Court ruled on the Rule 12(c) motion that, upon its creation, Plaintiff owned the copyright in and to the Copa Video, and that the Copa Video does not qualify as a work made for hire. *Cortés-Ramos*, 2022 WL 3156500, at *3-4.[6]  Accordingly, by assenting to the Contest Rules, and because the court has ruled that the Submission Materials are not a work made for hire, Plaintiff "irrevocably assign[ed]" to the Co-Sponsors (as defined in the Contest Rules) "all right, title, and interest in [his] entry," which encompassed the Copa Video.  The assignment language in the Contest Rules to which Plaintiff assented and regarding which he reaffirmed his assent, is unambiguous and clearly evidences an intention to transfer all of Plaintiff's rights (including copyright) in the Copa Video to Sony.

**C.**    **The Irrevocable Assignment Set Forth In Section 3(b)(ii) Of The Contest Rules Satisfies The Requirements Of Section 204(a) Of The Copyright Act**

Under Section 204(a) of the Copyright Act, "transferring copyright ownership requires (1) 'an instrument of conveyance, or a note or memorandum of the transfer,' (2) that is 'in writing' (3) and 'signed by the owner of the rights conveyed.'"  *Cortés-Ramos*, 2022 WL 3156500, at *5 (quoting 17 U.S.C. § 204(a)).  The Contest Rules and Section 3(b)(ii) satisfy all three requirements.

As an initial matter, there can be no legitimate dispute that the Contest Rules and Section 3(b)(ii) constitute "an instrument of conveyance, or a note or memorandum of the transfer," and that they are "in writing."  It is also clear that Plaintiff "signed" the instrument in question within the meaning of the Copyright Act.

Although no court in the First Circuit appears to have addressed the question, multiple courts – including the Court of Appeals for the Fourth Circuit – have determined that the federal E-Sign Act applies to transfers of copyrights and mandates the validity of assignments that comply

---

[6] Martin recognizes that ruling represents law of the case, but he expressly preserves his right to appeal that ruling.

with the terms of that statute, <u>including</u> assignments accomplished by clickwrap agreements such as the Contest Rules to which Plaintiff assented when he registered for the Contest and affirmatively clicked the Acknowledgement Box and the "SUBMIT" button.  *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 593, 600, 602 (4th Cir. 2013) ("subscriber's electronic agreement" to a Terms of Use Agreement by "click[ing] a button to assent" constituted a valid assignment of copyrights under Section 204 because, pursuant to the E-Sign Act, "an electronic agreement may effect a valid transfer of copyright interests under Section 204 of the Copyright Act").[7]  Section 1005 of the Compendium of U.S. Copyright Office Practices (Third Edition), which is published by the Copyright Office, cites *Metro. Reg'l* and notes than "[i]f the terms of service" on a website "state that the website becomes the owner of all the exclusive rights in any works that are lawfully uploaded to that site, the author may be deemed to have transferred ownership of the copyright in th[e] UGC [*i.e.*, user generated content] through a written, digitally-signed transfer agreement."[8]  *See also Apprio, Inc. v. Zaccari*, No. 18-cv-2180 (JDB), 2021 WL 2209404, at *7 (D.D.C. June 1, 2021), *reconsideration denied*, No. 18-cv-2180 (JDB), 2021 WL 4935379 (D.D.C. Aug. 27, 2021), *and on reconsideration in part*, No. 18-cv-2180 (JDB), 2022 WL 971001 (D.D.C. Mar. 31, 2022) (assignment of copyrights effectuated "[b]y

---

[7] The First Circuit has specifically declined to "address whether a browsewrap agreement may satisfy the writing requirement in 17 U.S.C. § 204," yet expressly acknowledged the manifest volitional distinction between clickwrap and browsewrap agreements.  *See Small Just. LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 319 n.4, 325 n.14 (1st Cir. 2017).  Quoting the lower court's opinion and citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014), the First Circuit explained: "[i]n a clickwrap agreement, users must select a check box or radio button to indicate that they agree to the website's terms and conditions.  In contrast, browsewrap agreements do <u>not require the user to manifest assent to the terms and conditions expressly</u>.  A party instead gives his assent simply by using the website." *Small Just. LLC*, 873 F.3d at 319 n.4 (internal citation omitted; emphasis added).

[8] The Compendium may be accessed at the following URL: https://www.copyright.gov/comp3/docs/compendium.pdf.

acknowledging the Agreement with a click of [assignor's] mouse … [b]ecause of the E-SIGN Act, this evidence is as good as a written signature").

As a more general matter, federal courts routinely have found "electronic signatures" to satisfy the requirements of Section 204(a) under analogous circumstances. *See, e.g.*, *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, 1113 (C.D. Cal. 2016) (endorsing *Metro. Reg'l* and finding emails "sufficient to act as [assignor's] signature" under Section 204(a) of the Copyright Act because, although assignor "did not have to click a 'yes' button," he "did have to click the 'send' button" to transmit the email); *Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 973 n.12 (D. Minn.), *modified*, 960 F. Supp. 2d 988 (D. Minn. 2013) (citing *Metro. Reg'l* and finding "electronic signatures were sufficient to confer an interest in the copyrights" at issue under Section 204(a));[9] *Dish Network L.L.C. v. TV Net Sols., LLC*, No. 12-cv-1629-ORL-41TBS, 2014 WL 6685366, at *8 n. 16 (M.D. Fla. Oct. 10, 2014), *report and recommendation adopted as modified*, No. 12-cv-1629-ORL-41TBS, 2014 WL 6685351 (M.D. Fla. Nov. 25, 2014) (citing *Metro. Reg'l* and holding that "the fact that the extension of the [assignment] agreement … was completed by email does not render the assignment of the associated copyrights ineffective under § 204."); *Vergara Hermosilla v. Coca-Cola Co.*, No. 10-cv-21418-CIV, 2011 WL 744098, at *3 (S.D. Fla. Feb. 23, 2011), *aff'd sub nom. Hermosilla v. Coca-Cola Co.*, 446 F. App'x 201 (11th Cir. 2011) (enforcing assignment under Section 204(a) accomplished by email and noting that "[c]ourts have found emails to constitute signed writings." (citing *Lamle v. Mattel, Inc.*, 394 F.3d 1355 (Fed.Cir.2005)).

---

[9] Review of the docket in *Reg'l Multiple Listing Serv*. confirms that the "electronic signatures" that the Court found satisfied the requirements of Section 204(a) were affixed to "click-through" agreements (which are similar to clickwrap agreements).  *See, e.g.*, Case No. 12-cv-00965 (RJT) (FLN) at ECF 100 ¶ 3.

### 1.     The January 8, 2014 Email And January 15, 2014 Affidavit
###         Also Independently Satisfy The Requirements Of Section 204(a)

In addition to the fact that Plaintiff's electronic signature and assent to the Contest Rules satisfy the requirements of Section 204(a), Plaintiff also effected a valid assignment of his copyright in the Copa Video because the January 8, 2014 Email and January 15, 2014 Affidavit both constitute "note[s] or memorand[a] of the transfer" that are "in writing," and Plaintiff signed both.  Further, as demonstrated above and in Defendant's accompanying Rule 56 Statement of Undisputed Facts, in the January 8, 2014 email, Plaintiff "re-confirm[ed] all the Terms and Conditions set out in the official rules," and, in the January 15, 2014 Affidavit – which incorporated the Contest Rules by reference – Plaintiff "affirm[ed] and represent[ed]" under oath "that [he] ha[d] complied with the Official Rules of the Contest, a copy of which is attached … ." (SUF ¶¶ 20-24).  Thus, by incorporating the Contest Rules, both the email and affidavit serve as "note[s] or memorand[a]" that independently satisfy Section 204(a).

On the Rule 12(c) motion, in discussing whether the Affidavit could satisfy Section 204(a), the Court expressed that it was "reluctant" to accept the Affidavit "as a memorandum of the transfer" since Plaintiff alleged that he "never received a copy" of the Contest Rules.  Consequently, the Court opined that if Plaintiff "never had access to the rules then he could not have agreed to them," and there was, thus, "no initial transfer to later confirm in writing."  *Cortés-Ramos*, 2022 WL 3156500, at *5.  The Court's concerns are conclusively addressed here.  As detailed above and in Defendant's accompanying Rule 56 Statement of Undisputed Facts, Plaintiff <u>did</u> have access to the Contest Rules before he submitted the Copa Video to the Contest (again, the Contest Website prominently included a hyperlink to the Contest Rules, and Plaintiff affirmatively clicked the Acknowledgment Box confirming his access and assent to the rules).  Further, as the authorities cited above in Section II.A.1. demonstrate, it ultimately does not matter whether Plaintiff

17

understood or even read the Contest Rules, provided he had the opportunity to do so (and it is indisputable that he did).  And, the First Circuit also has made clear – under similar circumstances – that the "onus" is on one who signs a document "to obtain and read a copy" of any other documents alluded to in it "before signing it."  *Soto*, 642 F.3d at 78 (quoting *Rodriguez-Bird*, 2010 WL 2541708, at *2; emphasis added).  Thus, regardless of whether Plaintiff subjectively knew or understood that he already had assigned the copyright in the Copa Video to Sony, he had, in fact done so, and both the email and Affidavit confirm that assignment and satisfy Section 204(a).

The Court also asked whether the affidavit was "a contract that unambiguously incorporate[d] the rules."  *Cortés-Ramos*, 2022 WL 3156500, at *6.  As demonstrated above in Section II.A.3., the Affidavit unambiguously incorporates the Contest Rules by reference in accordance with settled Puerto Rico law.  *See Cruz*, 170 F. Supp. 3d at 274; *Bonilla Davila*, 2019 WL 13262540, at *1.  Further, whether the Affidavit is a "contract" is not a material inquiry here; the Affidavit is a writing signed by Plaintiff (under oath), and to be effective an assignment need be signed only by the assignor, not the assignee.  *See Celta Agencies, Inc. v. Denizciliksanayi Ve Ticaaret, A.S.*, 396 F. Supp. 2d 106, 110 (D.P.R. 2005) ("under Puerto Rico legal provisions there are no formal requirements to an assignment nor must it appear in writing"); 17 U.S.C. § 204(a) (to be valid under Copyright Act, only assignor need sign transfer document).

For these independent reasons, Plaintiff effected a valid assignment under Section 204(a).

***          ***          ***          ***

For all of these reasons, Plaintiff's copyright infringement claim fails as a matter of law and should be dismissed with prejudice.  To summarize: (i) for multiple, independent reasons, Plaintiff indisputably assented to the Contest Rules; (ii) Plaintiff, in accordance with the plain and unambiguous language set forth in Section 3(b)(ii) of the Contest Rules, irrevocably assigned all

18

rights in and to the Copa Video; and (iii) the assignment set forth in Section 3(b)(ii) of the Contest Rules satisfies the requirements of Section 204(a) of the Copyright Act, and the January 8, 2014 email and January 15, 2014 Affidavit both independently satisfy Section 204(a).

## III.  THE COPYRIGHT INFRINGEMENT CLAIM ALSO FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF RELEASED HIS RIGHTS

Through Paragraph 6 of the notarized document titled "Use Of Contest Creative Materials Release And Authorization" (the "Release & Authorization"), which Plaintiff executed on January 15, 2014, Plaintiff stated: "I understand and agree that I do not and shall not have any rights, including without limitation, trademark rights, copyright rights, or publicity rights, in the Release or any portion thereof." (SUF ¶ 46). Read in context, the "Release" quoted in Paragraph 6 of the Release & Authorization refers to the potential commercial release of content that includes or incorporates the "Creative Materials" that Plaintiff submitted in connection with the Contest, *i.e.*, the Copa Video. Accordingly, in addition to (and even irrespective of whether) Plaintiff assigned away all his rights in the Copa Video (which he did), Plaintiff independently released any rights that he otherwise held in the Copa Video, and that release should be enforced under both New York and Puerto Rico law. *See, e.g.*, *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (NY 2011) (absent fraud or some other defense to enforcement, New York law requires strict enforcement of releases); *Velazquez Casillas v. Forest Lab'ys, Inc.*, 90 F. Supp. 2d 161, 170-71 (D.P.R. 2000) (enforcing release and granting summary judgment).

## IV.  IN THE EVENT THE INFRINGEMENT CLAIM IS NOT DISMISSED, THE STATUTE OF LIMITATIONS BARS ANY CLAIM FOR DAMAGES OR LOST PROFITS THAT ACCRUED BEFORE AUGUST 15, 2018, AND PLAINTIFF CANNOT RECOVER HIS ATTORNEY'S FEES OR STATUTORY DAMAGES

Plaintiff commenced this action on August 15, 2021. (ECF 1). The statute of limitations for copyright infringement is three years, which bars claims for infringing acts that occurred prior

to August 15, 2018.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671-72 (2014).

Accordingly, in the event that Plaintiff's claim survives dismissal, Plaintiff should be barred from

seeking any damages or lost profits under Section 504 of the Copyright Act related to alleged acts

of infringement that occurred prior to August 15, 2018.

　　　　Nor can Plaintiff recover his attorney's fees or statutory damages under Section 412 of the

Copyright Act because he admittedly published the Copa Video on January 2, 2014, yet he only

secured a purported registration for its copyright on March 1, 2017.  (*See* Rose Decl. Exhibit 1).

## V.　MARTIN SHOULD BE AWARDED HIS REASONABLE ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT

　　　　Section 505 of the Copyright Act provides that the Court may "award a reasonable

attorney's fee to the prevailing party as part of the costs" in "any civil action under this title."  A

party "prevails" in a copyright action for purposes of Section 505 when there is a "material

alteration of the legal relationship of the parties … ."  *Cortés-Ramos v. Sony Corp. of Am.*, 889

F.3d 24, 25 (1st Cir. 2018).  In determining whether a fee award is appropriate, the Court should

consider "several nonexclusive factors ... frivolousness, motivation, objective unreasonableness,

and the need in particular circumstances to advance considerations of compensation and

deterrence," but should give "substantial weight to the objective (un)reasonableness of a losing

party's litigating position."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202, 205 (2016)

(citations, quotations & brackets omitted).

　　　　Here, virtually all of those factors weigh in favor of awarding Martin his attorney's fees

because: (i) Plaintiff clearly assigned away all rights in the Copa Video and does not own the

copyright in and to the Copa Video; (ii) Plaintiff reaffirmed his assent to the Contest Rules by

which he assigned away his rights on multiple separate occasions; (iii) notwithstanding the above,

Plaintiff has commenced three separate federal court actions (involving four appeals to the First

Circuit) based on his nonexistent rights in the Copa Video and filed a fraudulent copyright registration with the United States Copyright Office; and (iv) Plaintiff nevertheless continues to prosecute an objectively baseless infringement claim.  In sum, Plaintiff's claims in this action are frivolous and objectively unreasonable, and considerations of compensation and deterrence warrant an award of attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, Martin respectfully requests that the Court dismiss the Complaint with prejudice, grant Martin judgment on his counterclaims, award Martin his reasonable attorney's fees and costs as the prevailing party in this action pursuant to 17 U.S.C. § 505, and grant Martin such other and further relief as the Court deems just and proper.

Dated: September 29, 2023

**PIETRANTONI MÉNDEZ & ÁLVAREZ, LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan PR 00918
Tel: 787-274-1212
Fax: 787-274-1470

s/Maria D. Trelles Hernández
María D. Trelles Hernández
USDC-Puerto Rico No. 225106
mtrelles@pmalaw.com

s/María Elena Martínez Casado
María Elena Martínez Casado
USDC-Puerto Rico No. 305309
mmartinez@pmalaw.com

**PRYOR CASHMAN LLP**
7 Times Square
New York, New York  10036
 (212) 421-4100

s/David C. Rose
David C. Rose (admitted *pro hac* vice)
drose@pryorcashman.com

*Attorneys for Defendant Enrique*
*Martin Morales p/k/a Ricky Martin*

21